## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOAH PUSEY,<br><br>                    Plaintiff,<br>    - against -<br><br>PEOPLE CENTER, INC. d/b/a RIPPLING,<br><br>                    Defendant. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff Noah Pusey ("Pusey" or "Plaintiff"), by his attorneys, White and Williams LLP, alleges as follows against defendant People Center, Inc. d/b/a Rippling ("Rippling" or "Defendant"):

### NATURE OF ACTION

1.       This is an action for unfair competition under the Lanham Act, 15 U.S.C. § 1051, et seq., and for unfair competition under Massachusetts law, arising from Rippling's use of the name RIPPLING, which is confusingly similar to RIPPLE®, a registered trademark (U.S. Reg. 5,430,908) owned by Plaintiff. This action seeks damages and injunctive relief to halt Rippling's use of the name RIPPLING, occurring and causing harm to Plaintiff in this District and elsewhere. With direct knowledge of the pre-existing registered trademark RIPPLE® for human resources-related software and services, Rippling has been using the confusingly similar mark RIPPLING for its own competing, human resource-related software and services. This ongoing use of the RIPPLING mark has already and is likely to continue to cause confusion to the public, which is causing irreparable harm to Plaintiff, his reputation and the goodwill associated with the RIPPLE® mark.

-1-

2.      In or around April 2015, Plaintiff began using the RIPPLE® mark through Ripple Analytics, Inc. ("Ripple"), a Delaware corporation with its principal place of business located in Massachusetts.  At the time Ripple began using the RIPPLE® mark, Plaintiff was a 50% owner of Ripple and the company's Chief Executive Order.

3.      Ripple applied to register the RIPPLE mark with the United States Patent and Trademark Office (the "USPTO") on August 21, 2016, having been advised by Goodwin Procter LLP with respect to the availability of the mark for use and registration. The USPTO issued the federal registration for the RIPPLE mark on March 27, 2018, and it was assigned U.S. Reg. 5,430,908.

4.      In or around April 13, 2018, Ripple's ownership changed whereby Plaintiff became the 100% owner of the company. As part of the ownership change, Ripple and Plaintiff entered into an Assignment and Assumption Agreement wherein the entire business of Ripple including the goodwill associated with the RIPPLE® mark was assigned to Plaintiff. From April 13, 2018, through the present, Plaintiff has been the sole owner of Ripple and the RIPPLE® mark and the continuous user of the mark in the same human resource-related software business.

5.      Plaintiff, Ripple's sole owner, gave permission for Ripple to be the exclusive user of the mark and Ripple continued to use the RIPPLE® mark in furtherance of its business. The RIPPLE® mark was used with great success in connection with human resources services, specifically for a software platform that assists companies with performance evaluations, employee feedback, and professional development. As Ripple states on its website, its RIPPLE® software platform enables real-time feedback and performance evaluation to improve intracompany communication. Figure 1 below is a screenshot of Ripple's website as of February 2020.



Figure 1

6.     Figure 2 below is a screenshot of Ripple's website as of November 2025.



Figure 2.

7.     On May 8, 2017, Defendant applied to register the RIPPLING mark for software performing a wide swath of human resources-related functions, claiming to have commenced use in December 2016 (*i.e.*, more than a year and a half after Plaintiff's first use of the RIPPLE® mark and more than three months after Ripple had applied to register the RIPPLE® mark). Incredibly, the lawyer who filed the application to register Defendant's RIPPLING mark is the very same

Goodwin Procter attorney who had earlier advised Plaintiff as to the availability of the RIPPLE mark.

8.    The USPTO subsequently issued an Office Action in response to Defendant's application for the RIPPLING mark specifically and expressly because of a likelihood of confusion with Plaintiff's RIPPLE® mark. Defendant did not contest the Office Action and, instead, chose to abandon its effort to register the RIPPLING mark.

9.    Yet, in deliberate disregard of the prior trademark registration of RIPPLE® being used to identify Plaintiff's business before Defendant began using the RIPPLING mark, Defendant continued its use of the RIPPLING mark unabated. Defendant has, in fact, been using the RIPPLING mark in connection with the very same human resource-related functions — evaluations, feedback, and professional development — that Plaintiff's software performs under the RIPPLE® mark, as demonstrated by, *inter alia,* the following screenshots from Defendant's public-facing website. Figure 3 below is a screenshot of Defendant's website as of February 2020, Figure 4 below is a screenshot of Defendant's website as of August 2023 and Figure 5 below is screenshot of Defendant's current website as of November 2025.



Figure 3



Figure 4



Figure 5.

      10.    Defendant has and continues to knowingly and willfully conduct its business under RIPPLING with complete disregard for the confusion that it has created with the RIPPLE® mark, creating injury to the public and to Plaintiff, who is the rightful owner and user of the RIPPLE®

50730459v.1

mark. Plaintiff brings this action to halt such use and to be made whole for the damages he has suffered from Defendant's willful and intentional prior and misconduct.

## PARTIES

11.     Plaintiff Noah Pusey (as defined above, "Pusey" or "Plaintiff") is an individual residing in Medfield, Massachusetts.

12.     Upon information and belief, defendant People Center, Inc. d/b/a Rippling (as defined above, "Rippling" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 2570 Folsom Street, San Francisco, California 94110.

## JURISDICTION AND VENUE

13.     This case is a civil action arising under the Lanham Act, 15 U.S.C. § 1051, et seq. This Court has subject matter jurisdiction over the claims in this Complaint that relate to unfair competition pursuant to 15 U.S.C. §§ 1121, 1125(a), 28 U.S.C. §§ 1331, 1338, 1367, and principles of supplemental jurisdiction.

14.     This Court has supplemental jurisdiction over the additional claim in this Complaint that arises under the common law of the Commonwealth of Massachusetts pursuant to 28 U.S.C. § 1367(a), because the state law claim is so related to the federal claim that it forms part of the same case or controversy and derives from a common nucleus of operative facts.

15.     This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant transacts business within Massachusetts, contracts to supply services within Massachusetts, has committed and continues to commit wrongful unfair business conduct within Massachusetts, has committed and continues to commit such conduct outside of Massachusetts causing injury to Plaintiff in Massachusetts and regularly does or solicits business in Massachusetts, has directed and continues to direct its business efforts into Massachusetts and

-6-

expects or reasonably should expect its unfair business conduct to have consequences in Massachusetts, and derives substantial revenue from interstate commerce. Such activities fall within the long-arm statute for personal jurisdiction in the State of Massachusetts, Mass. Gen. Law. ch. 223A, § 3.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is deemed to reside in this District and because Defendant's acts are causing confusion of the public and injury to Plaintiff, or a likelihood of confusion and injury, within this District and elsewhere.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.    General Background

17.    Ripple was co-founded in 2014 by Plaintiff and his business partner, Derek Hedges, who subsequently passed away from cancer in April 2015, whereupon Plaintiff assumed the position of Ripple's CEO and President and became solely responsible for overseeing all of Ripple's business operations.

18.    With the consent of Plaintiff, Ripple has used the federally registered RIPPLE® trademark in connection with its human resources-related software platform since early 2015. As described above, at all times relevant hereto, Ripple was under the continuous control of Plaintiff, the owner and manager of Ripple and assignee of the mark. The RIPPLE® mark is inherently distinctive in the services offered.

19.    The RIPPLE® software platform provides Ripple's (and ultimately Pusey's) customers with a variety of tools for talent assessment, performance tracking, employee feedback, and professional development. The following is an example of the RIPPLE® software platform's user-facing dashboard display, which shows the user's Ripple Effect Score and other metrics:



Figure 6 (as of February 2020)



Figure 7 (as of September 2025)

20.    Since launching in 2015, Ripple has enjoyed tremendous success with the

RIPPLE® software platform. Indeed, since 2015 Ripple has had over 80 organizations use its

50730459v.1

platform with over 13,600 users in a variety of geographic locations, including New York, Massachusetts, Ohio, North Carolina, Florida, Texas, New Jersey, Pennsylvania, Vermont, Colorado, Washington, Arizona, Maine, District of Columbia, Pennsylvania, California, Minnesota, Maryland, Virginia, and Oregon.

21.     The RIPPLE® software platform enables employees to solicit and obtain personal and professional feedback from their colleagues and track their professional development through the use of an individualized dashboard. In contrast to the traditional top-down, annual performance evaluation model, the RIPPLE® software platform promotes real-time feedback among coworkers and with management, and is designed to increase employee self-awareness, productivity, and morale.

22.     Ripple currently operates the dedicated website www.ripplecrew.com, which features information about the RIPPLE® software platform, contact information, and an invitation to set up a free trial account.

23.      Prior to 2022, Ripple operated a dedicated website www.ripplecrew.com which also featured information about the RIPPLE® software platform, contact information and an invitation to set up a free trial account.

24.     Ripple also has several strategic partners that promote, market and sell licenses to the RIPPLE® software platform.

25.     Prior to adopting the RIPPLE® mark, Ripple retained Goodwin Procter LLP to advise it on matters pertaining to its intended adoption and registration of the RIPPLE® mark.

26.     Based on that advice, Ripple applied to register the RIPPLE® mark with the USPTO on August 21, 2016. Ripple obtained a trademark registration, U.S. Reg. No. 5,430,908,

for the RIPPLE® mark on March 27, 2018, covering software and software platforms that perform

a variety of human resource-related functions including, without limitation,

> monitoring and managing feedback of and from employees, employee assessments, employee ratings, employee and individual career development, business management, personnel management and analysis, human resources management and analysis, and expertise and qualification analysis and management of employees, personnel and independent contractors[.]

**II.**     **The Assignment and Assumption Agreement and Pusey's Control**

27.     Ripple entered into an Assignment and Assumption Agreement dated April 13,

2018, because it was in the process of restructuring the business. The Assignment and Assumption

Agreement assigned the entirety of Ripple's business, including the goodwill and all income and

proceeds associated with its mark, to Pusey such that Pusey would be entitled to any profits

generated by the mark. Thereafter, Ripple continued, with the permission of its sole owner, Pusey,

and under his sole and continuous control as its CEO, President and sole shareholder, to be the

exclusive user of the mark.

28.     At no time did Pusey allow any other person or entity to use the RIPPLE mark.

Rather, at all times, Pusey remained in complete control of Ripple.  In that capacity, he managed,

and was in complete control of, the day-to-day operations of the business, including sales,

marketing and technology and was responsible for all decisions with respect to the same.

29.     Ripple spent more than eleven (11) years and invested substantial amounts to

develop, maintain, market, and advertise its innovative and unique RIPPLE® software platform.

This includes countless hours, and more than one million dollars personally invested in Ripple by

Plaintiff.

30.     Plaintiff is the owner of the RIPPLE® mark and granted exclusive use of the

RIPPLE® mark to Ripple for use in its human resources-related business, which at all relevant

times, has been under the sole and continuous control of Pusey and any profits that would have been earned by Ripple would have automatically flowed to Pusey and no one else.

31.    The RIPPLE® mark is exclusively associated with Pusey's business.

32.    Plaintiff has expended substantial time, resources and effort to develop and obtain a strong reputation in the marketplace and enormous goodwill in the RIPPLE® mark.

33.    By reason of the foregoing, substantial goodwill has been associated with and generated with the RIPPLE® mark and the human resources services provided thereunder.

III.    **Defendant's Improper Use of the RIPPLING mark**

34.    Upon information and belief, Defendant commenced its use of the RIPPLING mark in or about December 2016, as indicated in its USPTO application.

35.    In particular, on May 8, 2017, Defendant applied to register the RIPPLING mark in standard character form (Serial No. 87/441,040) for services in International Class 42 (one of the two classes for which Plaintiff obtained registration). In its trademark application, Defendant described the services for which it had been using the RIPPLING mark as,

> Software as a service (SaaS) services featuring enterprise software to create, manage and consolidate all employee on-boarding and off-boarding services, namely creating and managing information technology account configurations, employee hardware and software configuration and management; human resources accounts and employee payroll management, facilities access and management, and preparation and management of employee legal, financial and tax documents[.]

36.    As noted above, the attorney who filed Defendant's application to register the RIPPLING mark was the very same attorney who had previously advised Plaintiff regarding the use and registration of its RIPPLE® mark. In addition to creating an obvious conflict of interest for Goodwin Procter, her prior work for Ripple made her well aware of the RIPPLE® mark and the various services in connection with which Ripple and Pusey had used the mark.

50730459v.1

37.     On August 9, 2017, the USPTO issued an Office Action concerning the registration of the RIPPLING mark based on likelihood of confusion with the RIPPLE® mark. Although Defendant was, upon information and belief, already well aware of the prior-filed application to register the RIPPLE® mark as a result of Goodwin Procter's representation, Defendant certainly was made aware of the RIPPLE® mark, and the likelihood of confusion caused by Defendant's use of the RIPPLING mark, in August 2017 at the very latest, by virtue of the Office Action.

38.     Defendant chose not to contest the Office Action and the USPTO deemed its application to register the RIPPLING mark abandoned on March 7, 2018. Defendant's co-founder and CEO was involved in the decision to register the RIPPLING mark and learned, at the time the application was rejected, that the RIPPLING mark was not being registered due to possible confusion with the pre-existing RIPPLE® mark but neither he nor anyone else at Defendant made any effort to address the problem. Having been directly informed of the confusion, he nonetheless proceeded because, he decided that "it wasn't any kind of prohibition on using the mark," and he "thought there was no issue." Defendant deliberately chose not to respond to the USPTO simply because that "isn't something we want to do right now," and "we can always take it up later," knowingly creating confusion to the public given the Ripple's pre-existing use of the confusingly similar mark RIPPLE®, which had been registered by the USPTO for use in a competing business in the same space. In the fall of 2019, Pusey reached out to Defendant in an effort to find a resolution to the conflict, but Defendant continued its use undeterred.

39.     Despite its awareness of the RIPPLE® mark, Defendant has continued to use the RIPPLING mark for human resources-related software on a national basis, including in the Commonwealth of Massachusetts and this District. Rippling has entered strategic partnerships with human resources and financial technology firms with offices across the country, including in

Massachusetts. Defendant also operates a highly interactive website at www.ripplecrew.com that provides information about the RIPPLING services and invites visitors to "See Rippling," *i.e.*, to schedule a software demonstration, by submitting their name and contact information.

40.    As revealed on its website, Defendant's trademark uses not only cover the same general type of services as those under the RIPPLE® mark (*i.e.*, human resources-related software), but Defendant has also more specifically marketed the RIPPLING services as providing "Performance Management" functions through its integration with other apps, run by Ripple's competitors, that perform performance review and employee feedback functions (*see* Figures 3, 4 and 5 above) and as assisting with performance evaluations more generally, as shown in the following screenshot from Defendant's website in or around February 2020 referencing "Quarterly Performance Review[s]" (Figure 8 below) or more recently from Defendant's website in or around November 2025 (Figure 9 below):



Figure 8.



Figure 9.

41.     In or around August 1, 2022, after Ripple brought a lawsuit against Defendant on or about February 19, 2020, for Defendant's improper use of the RIPPLE® mark in the Eastern District of New York (the "Ripple Action"), Defendant expanded its business to copy Ripple's concept of using employee surveys to get feedback, which was explicitly explained in detail during Pusey's individual and corporate deposition on behalf of Ripple in the Ripple Action. Defendant calls its survey product "Rippling Pulse," despite insisting in the Ripple Action that its business

-14-

was completely different and without providing any documents about the "Rippling Pulse" launch in discovery. Figures 10 and 11 below are two current screenshots of Defendant's public website page on "Rippling Pulse":



Figure 10.

Our newest product, **Pulse**, allows you to automatically send any survey to the right employees, at the right time—from onboarding to pulse to exit surveys—and trigger follow-up actions based on their responses.

And because Pulse is deeply integrated with Rippling, you can analyze employees' responses by department, level, location, and any other data available in Rippling. So you can finally answer the "why?" behind your survey data within seconds.

Figure 11.

42.    In direct contravention to launching the Pulse product, Defendant continued to assert in the Ripple Action that it had no performance management software product and that "the services offered by Rippling under the RIPPLING Mark are not the same services as those offered by [Ripple] under the RIPPLE Mark." Moreover, Defendant's co-founder and CEO testified that Rippling's and Ripple's businesses were very different with "very different business lines." In

addition, when asked if there were plans to create or offer any survey product, Defendant's top sales account executive testified "[n]ot that I'm aware of."

43.     Tellingly, Defendant never disclosed in the Ripple Action that it had launched the substantially similar survey product called Rippling Pulse.

44.     Defendant's use of the RIPPLING mark is likely to continue to cause consumer confusion with the RIPPLE® mark. In fact, it already has caused actual confusion. As recently as June 2025, during an initial call, a potential strategic partner referred to Ripple as Rippling.  The confusion has been exacerbated by Defendant's employees who have referred to RIPPLING as RIPPLE®. Even Defendant's customers have referred to RIPPLING as RIPPLE.  Defendant's customers have contacted Ripple for help with a "log in" for Rippling's services, confusing the two companies. Moreover, potential customers who have rejected using Rippling's services have been unwilling to consider using Ripple's services, on the assumption that the companies were the same.

45.     As a direct and proximate result of Defendant's actions as stated herein, Plaintiff has suffered damage to the reputation of his company, Ripple, and damage to the goodwill of his RIPPLE® mark.

46.     According to news coverage, Defendant has an $16.8 billion valuation that has allowed it to raise over $2.24 billion through its Series G capital rase ($450 million in May 2025) to date (of which approximately $1 billion Rippling has in cash) and has over $500 million in annual recurring revenue that is growing at over 100% each year.

47.     Defendant's investors include a venerable "who's who" list of Silicon Valley investors including Founders, Andreessen Horowitz, Sands Capital, GIC, Goldman Sachs Growth,

Baillie Gifford, Elad Gi, Y Combinator, Sequoia Capital, Founders Fund, Kleiner Perkins and Greenoaks.

## COUNT I
### (Trademark Infringement Under 15 U.S.C. § 1114)

48.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

49.     At all relevant times, Pusey has been the owner of the federal trademark registrations set forth in paragraph 4 above.

50.     U.S. Registration No. 5,430,908 is conclusive evidence of the validity of the registered mark, of the registration of the mark, of Pusey's ownership of the registered mark and of his exclusive right to use the registered mark in commerce for or in connection with the services specified in the registrations.

51.     Defendant's unauthorized, intentional, willful and continued misuse in commerce of a substantially similar name of the properly registered RIPPLE® mark in connection with the sale, offering for sale, or advertising of services related to human resources including without limitation employee performance reviews and surveys had and is likely to cause confusion, to cause mistake and to deceive consumers and the public into believing falsely that Plaintiff is the source of Defendant's services, that the RIPPLING products and RIPPLE® products emanate from the same source, or that Defendant's services are sponsored by, affiliated with or otherwise approved or endorsed by Plaintiff all to his and the public's detriment.

52.     Defendant's unauthorized, intentional, willful and continued misuse of the RIPPLE® mark constitutes use in interstate commerce.

53.     Defendant's activities described herein constitute infringement of federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     Defendant's unlawful acts have been committed with actual and constructive knowledge of the prior registered rights in the RIPPLE® mark and constitute willful and deliberate infringement of the RIPPLE® mark in violation of 15 U.S.C. § 1114(1).

55.     Defendant's actions were undertaken for the willful and calculated purpose of trading on, and thereby injuring, the goodwill that has been established in the RIPPLE® mark.

56.     Defendant's unlawful acts have caused irreparable injury to Pusey, for which there is no adequate remedy at law, and will continue to cause irreparable injury unless enjoined. Accordingly, Plaintiff is entitled to injunctive relief as prayed for herein, pursuant to 15 U.S.C. § 1116(a).

57.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages or reasonable royalty for use of the RIPPLE® mark; the revenue and profits that Pusey would have been able to generate from his use of his mark but for Defendant's willful infringement; disgorgement of the Defendant's profits, enhanced damages, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
### (Common Law Trademark Infringement)

58.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

59.     In causing a likelihood of customer confusion, the Defendant's actions constitute common law trademark infringement in violation of Massachusetts law.

60.     The Defendant has acted with full knowledge of trademark rights in the RIPPLE® mark and without regard to the likelihood of confusion of the public caused by their activities.

50730459v.1

61.     The Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of trademark infringement, gains, profits, and advantages to which the Defendant is not in law or equity entitled.

62.     Plaintiff has been damaged by the Defendant's acts of common law trademark infringement. Plaintiff does not have an adequate remedy at law for these injuries.

63.     The Defendant's actions described herein have caused and will continue to cause Plaintiff to suffer irreparable harm for which he has no adequate remedy at law unless enjoined by this Court.

**COUNT III**
**(Unfair Competition Under 15 U.S.C. § 1125(a))**

64.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

65.     Defendant's unauthorized, intentional, willful and continued adoption and misuse of a name and trademark – RIPPLING – that is nearly identical to the RIPPLE® mark, in connection with services that are identical or nearly identical to those provided by Pusey through his wholly owned company, Ripple, as alleged herein is likely to cause confusion, mistake and deception as to the origin, source, sponsorship or affiliation of the Defendant's services, and is likely to cause consumers to believe, contrary to fact, that the Defendant's services are sold, authorized, endorsed, or sponsored by Pusey through his company, Ripple, or that they are somehow affiliated.

66.     The Defendant's unauthorized, intentional, willful and continued misuse in interstate commerce of the RIPPLE® mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact concerning the nature,

-19-

characteristics, qualities and origin of Defendant's commercial activities, within the meaning and in violation of 15 U.S.C. § 1125(a).

67.    Defendant's unlawful, intentional, willful and continued misuse of the RIPPLE® mark are and were intended to co-opt the goodwill in the RIPPLE® mark for Defendant's own pecuniary gain.

68.    Defendant's past and continuing intentional misconduct as alleged herein is willful and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of RIPPLING and RIPPLE®.

69.    Defendant's misuse of the RIPPLE® mark has caused and is likely to cause confusion and, unless enjoined, is likely to lead consumers to the mistaken belief that the Defendant's services originate from or are in some way associated with, affiliated with, connected to, related to, or sponsored or approved by Plaintiff or his company, Ripple.

70.    Defendant's acts were undertaken and continued with the full knowledge of Pusey's intellectual property rights.

71.    The aforesaid and continuing acts of Defendant in using a confusingly similar mark to the RIPPLE® mark constitutes unfair competition, false designation of origin, palming off, and false description or representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.    Plaintiff has been damaged and continues to be damaged by said unfair competition and has no adequate remedy at law to address the continuing confusion caused by Defendant's use of the RIPPLING mark. Plaintiff is entitled to a permanent injunction restraining Defendant, its respective officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further acts of unfair competition caused by the improper use of the RIPPLING mark.

Unless enjoined, Defendant's prior and continuing use of RIPPLING will cause irreparable harm to Plaintiff including the goodwill associated with the RIPPLE® mark.

73.    Plaintiff is further entitled to recover from Defendant the actual damages that it sustained and/or is likely to sustain as a result of Defendant's wrongful acts.

74.    Defendant has made and continues to make substantial profits and gain from its misuse of the RIPPLE® mark to which it is not entitled in law or equity.

75.    Plaintiff is further entitled to disgorge from Defendant the gains, profits and advantages that Defendant has obtained as a result of its willful wrongful acts.

76.    Because of the willful nature of Defendant's wrongful acts, Plaintiff is entitled to an award of exemplary damages, and treble damages, increased profits and his reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT IV
### (Common Law Unfair Competition)

77.    Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

78.    Defendant's unauthorized, intentional and willful misuse in interstate commerce of the RIPPLE® mark as alleged herein is misleading.

79.    Defendant has created and will continue to create confusion in the marketplace through its use of the RIPPLING mark as to the nature of the relationship between the RIPPLING and RIPPLE® marks and the sources of the services offered by each. Defendant's unlawful acts are intended to capitalize on the goodwill associated with the RIPPLE® mark for Defendant's own pecuniary gain.

80.     Defendant acted and continues to act with full knowledge of the already registered RIPPLE® mark and without regard to the likelihood of confusion of the public caused by its activities.

81.     Defendant's prior and continued intentional and willful misuse of the RIPPLE® mark is calculated to and is likely to create confusion, deception and mislead consumers into believing that Defendant's services originate with or are authorized by Plaintiff, or that Plaintiff is responsible for Defendant's services, and is likely to cause confusion as to the source of Defendant's services, all to the prior and ongoing detriment of Plaintiff.

82.     Defendant's acts as alleged herein constitute unfair competition, infringement of common law trademarks, unfair methods of competition, unethical, unscrupulous, or substantially injurious and deceptive acts or practices in the conduct of trade or commerce.

83.     Defendant committed the acts alleged herein willfully and with the purposeful intent to confuse the public and to injure Plaintiff.

84.     The acts of Defendant have caused and continues to cause irreparable harm for which there is no adequate remedy at law and, and unless Defendant is permanently restrained and enjoined by this Court, such irreparable harm will continue.

85.     The Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of unfair competition, gains, profits, and advantages to which the Defendant is not in law or equity entitled.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

1.     Enter judgment in favor of Plaintiff and against Defendant on all counts of the Complaint;

2.     Declare that Defendant has unlawfully infringed upon the RIPPLE® mark;

-22-

3.      Enjoin and restrain Defendant, and its subsidiaries, partners, members, officers, agents, servants, employees, attorneys, investors, and those in active concert or participation with them or any of them who receive actual notice of the order and judgment of this Court:

a.      from any further use of any name, or trademark, which includes in whole or in part the words "RIPPLE" or "RIPPLING" in connection with the offering of human resource services including employee performance reviews and surveys;

b.      from using RIPPLING alone or as an element of any name or mark in connection with the offering of human resource services including employee performance reviews and surveys;

c.      from operating any website using the name RIPPLE® or RIPPLING, or operating any website that links to a website operating under the name RIPPLING or any name that incorporates any form of RIPPLE® in connection with the offering of human resource services including employee performance reviews and surveys;

d.      from registering, obtaining or using any domain name or URL that consists of RIPPLING or any name that consists of or incorporates RIPPLE® in connection with human resource services, including employee performance reviews and surveys; and

e.      from registering, obtaining or using any social media account, including, without limitation, Facebook, Instagram, or Twitter, that operates under or refers to the name and mark RIPPLING or any name or mark that consists of or incorporates RIPPLE for or in connection with the offering of human resource services including employee performance reviews and surveys;

f.      from registering a corporation, partnership, business or other entity in the Commonwealth of Massachusetts or any other state within the United States under the name RIPPLING or any name that consists of or incorporates RIPPLE® in the field of human resource services including employee performance reviews and surveys;

g.      from committing any other act or making any other statement or using any other mark that infringes the RIPPLE® mark or constitutes an act of infringement, unfair competition, or deceptive trade practice under federal law, the laws of the Commonwealth of Massachusetts, or common law.

4.      Order Defendant to terminate, cancel, revoke, or otherwise abandon and discontinue any and all certificates of incorporation, business registrations or other licenses or registrations to conduct business in the Commonwealth of Massachusetts or any other state within the United States under the name RIPPLING or any name that consists of or incorporates RIPPLE® for any business or services in the fields of human resource services.

5.      Pursuant to 15 U.S.C. § 1116(a), ordering Defendant to file with the Court and serve upon Plaintiff's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

6.      Disgorgement of Defendant's profits;

7.      Award Plaintiff the revenue and profits that Pusey would have been able to generate from his use of his mark but for Defendant's willful infringement;

8.      Award Plaintiff any actual damages he sustained or a reasonable royalty for use of the RIPPLE® mark;

9.      Trebling the amount of damages awarded to Plaintiff pursuant to 15 U.S.C. §§ 1114, 1117;

10.     Awarding Plaintiff punitive damages for Defendant's intentional, willful or reckless and continuing unfair competition continuing after actual or constructive notice of same;

11.     Awarding Plaintiff its costs, expenses and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1117; and,

12.     Awarding Plaintiff such other or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues triable by jury.

Dated: January 14, 2026                     Respectfully submitted,

                                            **WHITE AND WILLIAMS LLP**

                                            */s/ David B. Chaffin*
                                            David B. Chaffin, Esq. (BBO 549245)
                                            Brandon R. Dillman, Esq. (BBO 696937)
                                            WHITE AND WILLIAMS LLP
                                            101 Arch Street - Suite 1930
                                            Boston, MA 02110-1103
                                            (617) 748-5200
                                            chaffind@whiteandwilliams.com
                                            dillmanb@whiteandwilliams.com

                                            *Attorneys for Plaintiff*

-25-